IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DANIELLE MAYHEW,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>       Defendant. | MEMORANDUM DECISION<br><br>Case No. 2:17-cv-00262- DBP<br><br>Magistrate Judge Dustin B. Pead |

The parties consented to this court's jurisdiction under 28 U.S.C. 636(c). (ECF No. 11).

Currently pending before the court is Plaintiff Danielle Mayhew's ("Plaintiff") appeal of the

Commissioner of Social Security's ("Commissioner") decision denying Plaintiff's claim for

Supplemental Social Security Income.  Having considered the parties' briefs, the administrative

record, and the relevant law, this court **AFFIRMS** the Commissioner's decision.

## I.      PROCEDURAL HISTORY

Plaintiff applied for Social Security Disability Insurance Benefits and Supplemental

Social Security Income on October 9, 2012. (Tr. 248). Plaintiff's application was denied initially

and on reconsideration. (Tr. 96, 120–22). On July 24, 2014, ALJ Kathleen H. Switzer issued her

decision denying benefits to Plaintiff. (Tr. 13–25). The Appeals Council denied Plaintiff's

request for review, making it the agency's final decision. (Tr. 1–3). Plaintiff then filed the

present suit.

## II.   FACTUAL BACKGROUND[1]

Plaintiff was 23 years old on her alleged onset date in January 2007. (Tr. 248). Plaintiff completed some college in 2006, but did not obtain a college degree. (Tr. 288, 1104). Plaintiff previously worked as a server. (Tr. 93).

### *Claimant Statements and Testimony*

Plaintiff reported that, on an average day, she performs a variety of daily activities including child care, cooking, sweeping, vacuuming, mopping, shopping, and socializing with friends and family. (ECF No. 15 at 2). Plaintiff also reported she tires easily during these activities, is forgetful and anxious, does not like to be outside alone, and has difficulty concentrating. (*Id.*) She engages in hobbies that include watching television, writing, typing, and listening to music, all without problems. (*Id.*) Plaintiff stated she had no issues following written or spoken instructions, or getting along with authority figures. (*Id.*) At times, Plaintiff reported worsening symptoms, but similar levels of functioning. (*Id.*)

Plaintiff's mother reported Plaintiff cared for her young daughter and helped with housework throughout the day, but that she tired easily and was often anxious and agitated. (*Id.*) Plaintiff also cared for the dog and cats, sometimes taking the dog for walks. (*Id.*) Plaintiff's mother reported Plaintiff had no issues with personal care, preparing her own meals, cleaning and laundry (if not in pain), and that she shopped weekly; though she did not drive, needed reminders to take medication and had emotional outbursts. (*Id.* at 2–3).

---

[1] As the Commissioner notes, Plaintiff raises only a narrow challenge to the ALJ's decision. Relying on the Commissioner's unchallenged recitation, the court sets forth a limited set of facts relevant to this matter, rather than the entire factual record. *See* (ECF No. 15 at 2 n.2).

At the November 2015 hearing, Plaintiff testified she had been addicted to pain medications, spice (synthetic marijuana), and anti-anxiety medications, but had stopped abusing pain medication four months prior to the hearing. (*Id.* at 3). She reported worsening symptoms of anxiety beginning after she was raped in late 2012, but she stopped all psychiatric medications "cold turkey" and reported increased crying since doing so. (*Id.*) Plaintiff said she had only two good days per week, but she was able to take her daughter to school and go shopping, attending parent-teacher conferences, and school programs. (*Id.*)

### *Medical Record*

Plaintiff sought mental health treatment from various providers between 2012 and 2015, including Valley Mental Health, Silverado Counseling, and Aspen Ridge Counseling. (*Id.*) After she requested a mental health evaluation from Valley Mental Health, and a document stating she could not work, Plaintiff chose not to engage in treatment beyond the initial evaluation. (*Id.*) Plaintiff was admitted to the hospital in February 2013 for suicidal and homicidal ideation. (*Id.*) She was diagnosed with depression, PTSD, and anxiety. (*Id.* at 3–4). She was discharged in stable condition after making significant progress during her stay. (*Id.* at 4). Plaintiff was admitted to the hospital again in June 2013 for a suicide attempt via overdose. (*Id.* at 3–4). She was diagnosed with recurrent major depression and improved with treatment. (*Id.* at 4).

### *Medical Opinions of Record*

In 2013 Plaintiff reported to consultative examiner Tanya Colledge, Psy. D. that the present application represents her third attempt to apply for disability benefits. (*Id.*) Plaintiff also reported she stopped working in 2008 when her daughter was born. (*Id.*) Plaintiff admitted a history of marijuana and spice abuse, but claimed she had been clean since 2011. (*Id.*) She

reported past traumas, including being physically and sexually abused by her stepfather during childhood, and being raped twice. (*Id.*) She also reported her 2013 psychiatric hospitalizations. (*Id.*) Plaintiff said she spent her days getting her daughter ready for school, transporting her to and from school, completing household chores, cooking meals, and watching television. (*Id.*) Dr. Colledge noted that Plaintiff was cooperative, oriented, logical, and coherent, with normal memory, speech, and thought content; she displayed appropriate affect, an adequate fund of knowledge, attention, concentration, and language, and unimpaired abstract reasoning, judgment and insight. (*Id.*) Dr. Colledge noted Plaintiff was able to maintain attention for the duration of the examination (approximately two-and-one-half hours) and meaningfully participate in the process. (*Id.*) Dr. Colledge found Plaintiff to be of low-average intellectual functioning and that she could generally remember simple instructions (and some multi-step instructions), but presented with "an impaired capacity to tolerate work stress." (*Id.* at 4–5).

In June 2013 state agency psychologist, Garrett Chesley, Ph.D., reviewed Plaintiff's records and opined she was capable of simple work with low social interaction. (*Id.* at 5). A second state agency psychologist, Charles Raps, Ph.D., confirmed Dr. Chesley's opinion in January 2014. (*Id.*)

In May 2014 Plaintiff's therapist, Angie Berry, wrote a letter to Plaintiff's attorney noting Plaintiff had experienced significant mental and physical trauma, including recent sexual trauma that resulted in psychiatric inpatient hospitalization and several surgeries. (*Id.*) Ms. Berry also noted Plaintiff's PTSD and depression diagnoses. (*Id.*) In August 2014 she submitted a mental-capacity-assessment form indicating Plaintiff had no limitations in social functioning, but Ms. Berry did not know whether Plaintiff suffered a number of other potential limitations. (*Id.*) The

same form indicates Plaintiff has marked and extreme limitations completing a normal workday or workweek, performing at a consistent pace, and maintaining attention and concentration. (*Id.*)

During the 2015 administrative hearing, Ronal Houston, Ph.D, testified after reviewing the full record and listening to Plaintiff's testimony. (*Id.*) He testified that none of Plaintiff's severe impairments met or equaled any listing. (*Id.*) He found Plaintiff suffered mild limitations in her daily activities, as well as with concentration, persistence and pace. (*Id.* at 5–6). Dr. Houston also found Plaintiff suffered moderate limitations in social interaction and one or two episodes of decompensation. (*Id.* at 6). Dr. Houston opined Plaintiff suffered mild limitations in her ability to carry out complex instructions and interact with coworkers and supervisors. (*Id.*) He also opined Plaintiff suffered moderate limitations interacting with the general public, but did not have any limitations in other areas of mental work-related functioning. (*Id.*)

## III. STATEMENT OF RELEVANT LAW

### a. Definition of Disability Under the Act

The Act states that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least twelve consecutive months. *Id.*; *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002).

### b. Process for Determining Disability Under the Act

To determine whether a claimant is disabled, Social Security regulations set forth a five-step sequential evaluation process. The adjudicator considers whether a claimant: (1)

engaged in substantial gainful activity during the alleged disability period, (2) had a severe

impairment, (3) had a condition that met or medically equaled the severity of a listed

impairment, (4) could return to his past relevant work, and if not (5) could perform other work in

the national economy.  20 C.F.R. § 404.1520(a)(4). If a decision regarding the claimant's

disability can be reached at any step in the sequential evaluation process, further evaluation is

unnecessary.  *Id*.

### c.  Standard of Review

A district court reviews the Commissioner's decision to determine whether substantial

evidence in the record as a whole supports the factual findings, and whether the correct legal

standards were applied. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Substantial

evidence means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id*. The court may neither reweigh the evidence nor substitute its

judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Where the

evidence as a whole can support the agency's decision or an award of benefits, the court must

affirm the agency's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## IV.    THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not been engaged in substantial gainful

activity since her application date, October  9, 2012. (Tr. 15). The ALJ also found that Plaintiff

suffered from three severe impairments: obesity, post-traumatic stress disorder ("PTSD"), and

personality disorder, not otherwise specified with borderline features. (*Id.*) At step three, the ALJ

determined that Plaintiff did not suffer from an impairment that met, or medically equaled, the

criteria of any listed impairment. (*Id.* at 16). At step four, the ALJ found Plaintiff had no past

relevant work. (Tr. 23). At step five, the ALJ found Plaintiff was capable of performing work that existed in in significant numbers in the national economy. (Tr. 24). Thus, the ALJ found Plaintiff not disabled.

## V.    DISCUSSION

Plaintiff argues that the ALJ' finding that Plaintiff can perform a limited range of light work is unsupported by substantial evidence. *See* (ECF No. 13 at 11). Next, Plaintiff suggests the ALJ erred by converting certain mild and moderate limitations discussed by a medical expert into percentages. (*Id.* at 15–19).

The Commissioner argues the ALJ properly analyzed the entire record when making her RFC determination and provided a number of justifiable reasons for finding Plaintiff capable of light work. (ECF No. 15 at 8). The Commissioner also contends Plaintiff's argument regarding productivity and performance fails because the ALJ reasonably discounted Plaintiff's testimony regarding limitations on her ability to concentrate and stay on task. (*Id.* at 13–14). Next, the Commissioner notes the ALJ did not commit error by converting mild and moderate limitations into percentages. (*Id.* at 9–11).  Finally, the Commissioner notes that any error is harmless because Plaintiff fails to show that she is incapable of performing limited light work. (*Id.* at 12).

### a.  Substantial evidence supports the ALJ's decision

At the outset, the court notes that Plaintiff's arguments do not truly appear to challenge the weight of the evidence that supports the ALJ's decision. Instead, Plaintiff complains about the manner in which the ALJ interpreted the evidence. For example, Plaintiff invites this court to

reconsider her own testimony and afford it weight the ALJ refused to give it.[2] (ECF No. 13 at

14). Once the court does that, Plaintiff then asks the court to adopt her attorney's hypothetical to

the Vocational Expert over the hypothetical the ALJ presented. (*Id.* at 15). These requests are

inappropriate for substantial-evidence review. The court may neither reweigh the evidence nor

substitute its judgment for that of the ALJ. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Relatedly, the court will not "displace the agency's choice between two fairly conflicting views,

even though the court would justifiably have made a different choice had the matter been before

it de novo." Thus, the court may not properly reweigh claimant's testimony, nor any other

evidence before the ALJ.

Moreover, the ALJ was not required to accept the answer to Plaintiff's hypothetical. To

succeed on her argument that the ALJ's decision lacks substantial evidence in the record, it was

incumbent on Plaintiff to point out some statement or conclusion in the ALJ's decision that lacks

"relevant evidence [that] a reasonable mind might accept as adequate to support [that statement

or] conclusion." *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Plaintiff has not

done so. Having failed to establish any deficiency in the ALJ's factual findings, "[t]he ALJ was

not required to accept the answer to a hypothetical question that included limitations claimed by

plaintiff but not accepted by the ALJ . . . ." *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995).

Despite citing cases addressing the substantial-evidence standard, Plaintiff does not identify any

portion of the ALJ's decision that lacks the necessary evidentiary support.

---

[2] Plaintiff affirmatively states she does not seek to challenge the ALJ's credibility findings. (ECF No. 13 at 12). Accordingly, the court will not analyze the ALJ's credibility determination.

Moreover, as the Commissioner points out, substantial evidence supports the ALJ's finding that Plaintiff can perform a limited range of light work. The ALJ thoroughly discussed Plaintiff's medical records, medical opinions in the record, Plaintiff's compliance with treatment regimens, Plaintiff's testimony, Plaintiff's mother's testimony, Plaintiff's activities of daily living, and her illicit drug use. (Tr. 18–23). As already mentioned, Plaintiff identifies no deficiency with the evidence supporting the ALJ's findings. The court's own review of the record does not reveal any problem with the evidence supporting the ALJ's finding that Plaintiff could perform a limited range of light work.

     1. *The ALJ did not err by using descriptors or percentages to describe the RFC he ascribed to Plaintiff*

Plaintiff's argument implicitly raises one other legal challenge to the ALJ's decision: the conversion of Dr. Ronald Houston's testimony about Plaintiff's functional limitations from terms like "mild" and "moderate" into different descriptive terms with corresponding percentage ratings. (ECF No. 13 at 15–19). Dr. Houston testified Plaintiff had mild limitation carrying out complex instructions, interacting with supervisors, and interacting with coworkers. (Tr. 63–64). Dr. Houston testified Plaintiff had a moderate limitation interacting with the general public. (*Id.*) The ALJ found Plaintiff capable of carrying out complex instructions or interacting properly with supervisors and coworkers "frequently but not constantly" (up to 90% of the time), and interacting with the public "occasionally" (up to 75% of the time). (Tr. 17–18). The ALJ also conveyed these descriptive phrases and percentages to the Vocational Expert during the administrative hearing. *See* (Tr. 65–66).

A.  The ALJ did not commit error in assessing Plaintiff's RFC.

First, the Commissioner is correct that the ALJ did not merely convert Dr. Houston's testimony into terms like "frequently" or occasionally with corresponding percentages. Instead, the ALJ appears to have arrived at these findings based upon her analysis of all record evidence, including but not limited to Dr. Houston's testimony. *See* (Tr. 17–23). While the ALJ's opinion reflects she (appropriately) considered Dr. Houston's testimony when making these findings, Plaintiff oversimplifies the matter by suggesting the ALJ merely randomly ascribed percentage values to Dr. Houston's testimony regarding nonexertional limitations. The ALJ reviewed, and cited, a large quantity of evidence to support the RFC determination.

With this in mind, Plaintiff does not identify any error in the ALJ's RFC determination. The ALJ alone bears the responsibility to determine a claimant's RFC from the medical evidence. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) In *Chapo*, the Tenth Circuit noted it "rejected the argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category. *Id.* at 1288–89 (alteration omitted). In doing so, the court cited earlier cases in which it upheld an ALJ's mental RFC findings that did not rely on medical opinion testimony. *See id.* (citing *Bernal v. Bowen*, 851 F.2d 297 (10th Cir. 1988); *Wall v. Astrue*, 561 F.3d 1048 (10th Cir. 2009)). These cases clarify that the ALJ has the responsibility to determine Plaintiff's RFC using all information in the record. Plaintiff does not analyze whether the ALJ failed to comply with these authorities. Thus, the court finds no error with the ALJ's RFC determination.

10

B. The ALJ was permitted to interpret Dr. Houston's testimony and substitute percentages for the limitations Dr. Houston described

Even assuming the ALJ derived the limitations directly from Dr. Houston's testimony, Plaintiff identifies no error because the ALJ was permitted to interpret that testimony when making an RFC finding. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016) (finding no error where ALJ did not "parrot [a non-examining psychologist]'s exact descriptions" of plaintiff's limitations). The *Chavez* court approved of an ALJ finding a claimant could only have "occasional and superficial contact with co-workers." *Chavez* at 375. Following *Chavez*, the court concludes the ALJ's findings are entirely appropriate here. The Tenth Circuit explicitly condoned the use of limitations on social contact such as "occasional and superficial" in *Chavez*. The ALJ in this case similarly found Plaintiff could "frequently but not constantly" interact with supervisors and co-workers and carry out complex instructions. (Tr. 18). She also found Plaintiff could only "occasionally" interact with the general public. The court finds no material difference between the terms "occasional and superficial" in *Chavez* and "frequently but not constantly" or "occasionally" used in the instant case. Thus, the ALJ did not commit error by using descriptive terms to illustrate Plaintiff's RFC for the Vocational Expert.

While Plaintiff filed no reply, she might have argued the error occurred here when the ALJ elected to provide additional detail by ascribing the approximate percentage of

the workday Plaintiff could maintain social contact or carry out complex instructions.

The court rejects any such argument because Social Security regulations utilize fractions

to describe the terms interpreted by the ALJ and the Tenth Circuit has previously

approved the use of percentages to describe mental limitations. SSR 83-10 defines

"occasionally" to mean "very little up to one-third of the time." Similarly, the same

regulation defines "frequent" as an event "occurring from one-third to two-thirds of the

time." Also, the Tenth Circuit cited SSR 83-10 as a basis for rejecting an argument that a

medical opinion was suspect because it described the portion of a given workday during

which a claimant could perform certain tasks. *Harrold v. Berryhill*, 714 F. App'x 861,

868–69 (10th Cir. 2017) ("It is also not apparent to us why a medical opinion regarding

the amount of time a person can or cannot perform work-related mental activities in a

workday or workweek is inherently confusing or suspect."). Based on these authorities,

this court finds nothing "inherently confusing or suspect" in the ALJ's use of percentages

to describe Plaintiff's RFC. Plaintiff offers no authority that might suggest the use of

percentages constitutes error.

C. Even assuming the ALJ erred in her RFC determination,
Plaintiff does not identify any resulting prejudice

Even assuming the ALJ's use of percentages somehow constitutes error, Plaintiff

has not shown any such error is harmful. An ALJ's failure to properly evaluate medical

opinions is harmless if the opinions do not conflict with the ALJ's RFC determination.

*Mays v. Colvin*, 739 F.3d 569, 579 (10th Cir. 2014) (finding alleged error to evaluate

medical opinions harmless because claimant did not explain why the limitations in the

opinions prevented claimant from performing sedentary work). Here, even assuming the

ALJ did simply convert Dr. Houston's opinions to percentages and such conversion constitutes error; Plaintiff fails to show (or even attempt to identify) any prejudice resulting from that alleged error.

The ALJ offered percentage limitations related to Plaintiff's ability to carry out complex instructions, interact with the public, and interact with supervisors and co-workers. (Tr. 18). Yet none of these skills is required for the jobs the ALJ found Plaintiff capable of performing. As the Commissioner points out, the ALJ found Plaintiff could perform a limited subset of unskilled work. (ECF No. 15 at 11) (citing Tr. 24). Unskilled work, by definition, requires an individual to carry out only simple instructions; not complex instructions. *See* SSR 96-9p, 1996 WL 374185 at *9; 20 C.F.R. § 416.968(a). Additionally, unskilled work typically involves working with "things" rather than people. 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 201.00(i). Also, the Dictionary of Occupational Titles indicates the ability to interact with people is "not significant" for each of the jobs (office helper, mail clerk, and hand packager) the ALJ found Plaintiff could perform. *See* Dep't of Labor, *Dictionary of Occupational Titles*, No. 239.567-010, 1991 WL 672232 (4th ed. 1991) (office helper); No. 209.687-026, 1991 WL 671813 (mail clerk); No. 559.687-074, 1991 WL 683797 (hand packager). Thus, the limitations at issue do not present barriers to the jobs the ALJ found Plaintiff could perform. Plaintiff identifies no harm related to the errors alleged in her opening brief and failed to file any reply brief addressing the Commissioner's argument on this point. Based on the foregoing, the court find Plaintiff has not identified any harmful error.

## VI.    ORDER

 Based on the forgoing, the court **AFFIRMS** the Commissioner's decision.

Dated this 1st day of May 2018.

Dustin B. Pead
United States Magistrate Judge